United States District Court
Middle District of Tennessee
Nashville Division

Federal Trade Commission, *et al.*,

     Plaintiffs,

     v.

United States Benefits, LLC, *et al.*,

     Defendants.

**Case No. 3:10-0733**

**(Proposed) Stipulated Final Order for Permanent Injunction and Monetary Judgment Against United States Benefits, LLC, Timothy Thomas, and Kennan Dozier**

On August 3, 2010, plaintiffs Federal Trade Commission ("Commission") and the State of Tennessee commenced this action, under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq.*, to obtain a permanent injunction and other equitable relief against defendants United States Benefits, LLC, Timothy Thomas, and Kennan Dozier, in connection with the marketing and sale of healthcare-related benefits or discount programs. The parties hereby stipulate to the entry of, and request the Court to approve and enter, this Stipulated Final Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters of dispute between them in this action.

**IT IS THEREFORE STIPULATED, AGREED, AND ORDERED** as follows:

1.      This is an action by Plaintiffs instituted under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the Telemarketing Act, 15 U.S.C. §§ 6101-6108, and the TCPA, Tenn. Code Ann. § 47-18-101, *et seq.*  Pursuant to these Sections of the FTC Act, Telemarketing Act, and TCPA, Plaintiffs have the authority to seek the relief contained herein;

2.      This Court has jurisdiction over the subject matter of this case and over the parties;

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b);

4.      The activities alleged in the Amended Complaint are in or affecting "commerce" as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and Tenn. Code Ann. § 47-18-103(11);

5.      The facts that Plaintiffs have stated in their Amended Complaint, if true, would state claims upon which relief may be granted under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 47-18-104 of the TCPA;

6.      Defendants have entered into this Order freely and without coercion, and they acknowledge that they have read the provisions of this Order and are prepared to abide by them;

7.      The undersigned have agreed that the entry of this Order resolves all matters of dispute between them arising from the Amended Complaint in this action, up to the date of entry of this Order;

8.      Defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order and waive and release any claim they may have against the

Case 3:10-cv-00733    Document 157    Filed 09/26/11    Page 2 of 52 PageID #: 2506

Receiver, Plaintiffs, their employees, representatives, or agents;

9.      Defendants agree that this Order does not entitle them to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, *as amended by* Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), and any other law, regulation or rule, and they further waive any rights to attorneys' fees that may arise under said provisions of law, regulation, or rule;

10.     Except as otherwise set forth in this Order, this Order does not constitute an admission by Defendants that the law has been violated as alleged in the Amended Complaint, or that the facts as alleged in the Amended Complaint, other than the jurisdictional facts, are true; and

11.     Entry of this Order is in the public interest.

## **Definitions**

For purposes of this Order, the following definitions shall apply:

1.      "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and cash, wherever any such asset is located, whether in the United States or abroad.

2.      "Assisting others" means providing services to any person that include, but are not limited to: (A) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (B) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (C) providing names of, or assisting in the generation of, potential customers; (D) performing or providing

Case 3:10-cv-00733    Document 157    Filed 09/26/11    Page 3 of 52 PageID #: 2507

marketing or billing services of any kind; (E) acting as an officer or director of a business entity; or (F) providing telemarketing services.

3.    "Corporate Defendant" means United States Benefits, LLC, also doing business as United States Health, United Benefits of America, LLC, UBA, United Benefits, United Health Benefits, Health Care America, HCA, National Benefits of America, Insurance Specialty Group, and Adova Health, and its successors and assigns.

4.    "Defendants" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

5.    "Defendants' Financial Statements" means the Federal Trade Commission Financial Statement questionnaires concerning each of the Defendants, signed by the Individual Defendants, and dated August 17, 2010.

6.    "Document" or "documents" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

7.    "Established business relationship" means a relationship between the seller and a person based on:  (a) the person's purchase, rental, or lease of the seller's goods or services or a financial transaction between the person and seller, within the eighteen (18) months immediately preceding the date of the telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

8. "Healthcare-related benefits or discount programs" include any program, membership, card, product, or other good or service, which is not insurance, that purports to offer discounts, savings, or benefits on healthcare, or access to such discounts, savings, or benefits.

9. "Individual Defendants" means Timothy Thomas and Kennan Dozier, individually and as owner and/or officers of the Corporate Defendant.

10. "Insurance" means any good or service that (A) has the effect of transferring or spreading risk; (B) is an integral part of the policy relationship between the insurer and the insured; and (C) is limited to entities within the insurance industry, or any conduct within the scope of conduct contemplated by Tenn. Code Ann. § 56-2-201.

11. "Insurance producer" means any person required to be licensed under the laws of Tennessee to sell, solicit, or negotiate insurance.

12. "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

13. "National Do Not Call Registry" means the National Do Not Call Registry, which is the "do-not-call" registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b )(l)(iii)(B).

14. "Outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

15. "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

16. "Plaintiffs" means the Federal Trade Commission and the State of Tennessee,

Attorney General and Reporter.

17.    "Receiver" means Robert H. Waldschmidt, the receiver appointed in this action for the Receivership Defendants.

18.    "Receivership Defendants" means the Corporate Defendant and the assets of the Individual Defendants.

19.    "Representatives" means Defendants' successors, assigns, officers, agents, servants, employees, or attorneys, and any Person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

20.    "Seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the Federal Trade Commission or Tennessee Attorney General.

21.    "Telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

22.    "Telemarketing" means any plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by means of the use of one or more telephones.

## I.

### Ban on Healthcare-Related Benefits or Discount Programs

**IT IS THEREFORE ORDERED** that Defendants, whether acting directly or through any other person, are hereby permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any

healthcare-related benefits or discount programs; and

B.      Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any healthcare-related benefits or discount programs.

## II.

### Permanent Voluntary Ban on Insurance

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any other person, are hereby permanently restrained and enjoined from:

A.      Advertising, marketing, promoting, offering for sale, or selling any insurance, in whole or in part, from or into the State of Tennessee;

B.      Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any insurance, in whole or in part, from or into the State of Tennessee; and

C.      Acting as an insurance producer within the definition set forth in Tenn. Code Ann. § 56-6-102(5).

Nothing in this Order shall prohibit Defendant Keenan Dozier from selling life insurance under AFLAC or another entity; provided that she is properly licensed, properly appointed, does not allow Defendant Timothy Thomas or any other individual to sign licensing or appointment paperwork on her behalf, does not allow her license to be used directly or indirectly by any other individual or entity, and obtains a new insurance agent appointment to sell life insurance for any entity besides AFLAC.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any other person, shall provide a copy of this Order to any state insurance agency or division to whom Defendants submit any application for an insurance license, and notify the Tennessee Attorney General's Office of any such application at the same time they submit such application.

Page 7 of 49

## III.

## Prohibited Representations

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service, other than healthcare-related benefits or discount programs or insurance, are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

A.  Any material aspect of the performance, efficacy, nature, characteristics, benefits, or qualities of the good or service;

B.  The total costs to purchase, receive, or use, and the quantity of, the good or service;

C.  Any material restriction, limitation, or condition to purchase, receive, or use the good or service;

D.  Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer; and

E.  That any person or entity is an agency of or affiliated with, endorsed or approved by, or otherwise connected to the Federal government or a state government.

## IV.

## Prohibition Against Receiving Compensation from Defendants' Customers

**IT IS FURTHER ORDERED** that Defendants and their Representatives are permanently restrained and enjoined from collecting from or attempting to collect from, or

billing or attempting to bill, any person to whom Defendants sold heathcare-related benefits or discount programs or insurance.

**V.**

**Prohibition Against Violating
the Telemarketing Sales Rule**

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the telemarketing of any good or service, other than healthcare-related benefits or discount programs or insurance, are hereby permanently restrained and enjoined from violating any provision of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, including, but not limited to:

A. Initiating any outbound telephone call to any person at a telephone number on the National Do Not Call Registry unless the seller proves that:

1. the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or

2. the seller has an established business relationship with such person and that person has not previously stated that he or she does not wish to receive outbound telephone calls made by or on behalf of the seller;

B. Failing to disclose truthfully, promptly and in a clear and conspicuous manner the identity of the seller, that the purpose of the call is to sell goods or services, and

Page 9 of 49

the nature of the goods or services;

C.    Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in 16 C.F.R. § 310.4(b)(4)(iii), unless:

    1.    prior to making any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

        (a)    the seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

        (b)    the seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

        (c)    evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

        (d)    includes such person's telephone number and signature; and

    2.    in any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

        (a)    allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

Page 10 of 49

(b)   within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by 16 C.F.R. § 310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

i.   in the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a do-not-call request pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(a)   automatically add the number called to the seller's entity-specific Do Not Call list;

(b)   once invoked, immediately disconnect the call;

(c)   be available for use at any time during the message; and

ii.   in the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll free-number to assert a do-not-call request pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(a)   automatically adds the number called to the seller's entity-specific Do Not Call list;

Page 11 of 49

<blockquote>
<blockquote>

(b)     immediately thereafter disconnects the call; and is accessible at any time throughout the duration of the telemarketing campaign; and

(c)     complies with all other requirements of the TSR and other applicable federal and state laws;

</blockquote>
</blockquote>

Provided, however, that if the Commission promulgates rules that modify or supersede the TSR, in whole or part, Defendants shall comply fully and completely with all applicable requirements thereof, on and after the effective date of any such rules.

**VI.**

**Monetary Judgment and Surrender of Assets**

**IT IS FURTHER ORDERED** that:

A.     Judgment is hereby entered in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of fifteen million seven hundred thirty-eight thousand nine hundred forty-one dollars ($15,738,941), which represents the amount of consumer injury caused by Defendants' alleged unlawful practices; provided, however, that subject to the provisions of Section VII ("Conditional Stay of Judgment Against Defendants") below, this judgment shall be suspended;

B.     Effective upon entry of this Order, Defendants surrender all dominion, control, and title to the assets referenced in Sections IX and XI.D of this Order;

C.     In the event that it is necessary for Defendants to execute additional documents to (1) assign right, title, or interest in and to future commission payments referenced in Section XI.D of this Order, (2) surrender Receivership assets under this Order, or (3) dissolve and wind down the Corporate Defendant, Individual Defendants

Page 12 of 49

shall execute such documents within three business days of a request from the Receiver or Plaintiffs;

D.       Any funds transferred or paid to the Commission pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to, consumer redress and any attendant expenses for the administration of any redress fund. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds to such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the acts and practices alleged in the Amended Complaint. Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement. Defendants shall have no right to challenge the Commission's choice of remedies under this Section;

E.       The State of Tennessee shall receive Three Hundred Thousand Dollars ($300,000) under this Order. The Receiver shall make payment to the State of Tennessee required by this provision immediately upon entry of this Order by providing a certified or cashiers check made payable to the "Treasurer, State of Tennessee - Attorney General." The $300,000 shall be distributed and used as follows by the State of Tennessee:

1.       If it is economically efficient, as determined at the sole discretion of the Director of the Tennessee Division of Consumer Affairs, in consultation with the Tennessee Attorney General, Tennessee's portion shall be used towards restitution to those consumers who:

Page 13 of 49

(a)     Prior to the date of entry of this Order, filed complaints with
        Tennessee Division of Consumer Affairs, the Better Business
        Bureau of Middle Tennessee, the Federal Trade Commission
        and/or the National Association of Attorneys General;

(b)     Any other consumers who are identified within ninety (90) days
        following the date of entry of this Order who complained prior to
        date of entry of this Order to the Tennessee Division of Consumer
        Affairs, the Better Business Bureau of Middle Tennessee, the
        Federal Trade Commission and/or the National Association of
        Attorneys General; and

(c)     Any other consumers who file a complaint with the Tennessee
        Division of Consumer Affairs or the Tennessee Attorney General
        within ninety (90) days following the date of entry of this Order.

This shall be referred to as the "TN DCA Restitution Program." If funds are not
available to satisfy all of the restitution claims within the TN DCA Restitution
Program, but distribution is economically efficient as determined at the sole
discretion of the Director of the Tennessee Division of Consumer Affairs, in
consultation with the Tennessee Attorney General, the amount shall be distributed
on a *pro rata* basis by the Tennessee Division of Consumer Affairs. Further, if
the number of consumers who are eligible under the criteria set forth above would
make a distribution economically inefficient (*i.e.*, high administrative costs
resulting in a nominal consumer restitution amount), as determined at the sole
discretion of the Director of the Tennessee Division of Consumer Affairs, in

consultation with the Tennessee Attorney General, restitution shall not be required to take place and the funds shall be distributed as set forth in Section VI.E.7. below.

2.    If restitution is deemed economically efficient, as determined at the sole discretion of the Director of the Tennessee Division of Consumer Affairs, in consultation with the Tennessee Attorney General, and the Tennessee Division of Consumer Affairs proceeds with the TN DCA Restitution Plan, the following terms shall apply:

(a)    To determine if additional consumers filed written complaints in addition to those filed with the Tennessee Division of Consumer Affairs, the Tennessee Division of Consumer Affairs will contact the BBB of Middle Tennessee, the Federal Trade Commission, other state agencies, and the National Association of Attorneys General prior to the date of entry of this Order and request that they provide within ninety (90) days copies of any consumer complaints they received prior to the date of entry of this Order.

(b)    The date of filing a consumer's complaint will be determined by the date of the postmark, the date of any official stamp indicating the date of receipt, or the date of the email on the complaint. If no date is available using these criteria, the Director shall determine whether the complaint is eligible for any restitution program.

(c)    For the TN DCA Restitution Program, the Director of the Tennessee Division of Consumer Affairs shall determine consumer

eligibility and the appropriate amount per consumer due in restitution for ascertainable losses and related injuries in consultation with the Tennessee Attorney General. The Director's decision based on the complaint records which shall be final and non-appealable.

(d) Each consumer's restitution check shall be mailed to the address provided by the consumer along with a letter from the Tennessee Attorney General and Director of the Tennessee Division of Consumer Affairs approved by the Attorney General prior to its use.

(e) The restitution checks and letters are recommended to be sent certified mail - return receipt requested; however, the Director of the Tennessee Division of Consumer Affairs may choose to use other nationally accepted mailing methods for economic reasons at the time of the mailing.

(f) In order to address any unique situations that might arise in the TN DCA Restitution Program, the Tennessee Division of Consumer Affairs shall handle the following situations as indicated when issuing restitution checks to consumers:

    i.     If a consumer who was eligible for restitution is now deceased, the restitution payment shall be made to the estate of the deceased person.

    ii.     If the purchase was made by a minor, the restitution check

shall be made jointly payable to the minor child's parents or legal guardians.  If the child is in the sole custody of one parent or only has one parent or one legal guardian, the restitution check shall be made payable to the sole custodial parent or single parent.

iii.  If the purchase was made by a married couple which are now divorced, a single restitution check shall be made jointly payable to both the former husband and former wife, unless a protective order is in place relating to one of the parties.  In that situation, two checks shall be issued, half to each former spouse.

iv.  If the purchase was made jointly by two or more unrelated persons, a single restitution check shall be made jointly payable to those persons.

(g)  If the TN DCA Restitution Program has not been completed, any eligible consumer who was/is inadvertently, mistakenly or otherwise omitted from the Tennessee Division of Consumer Affairs' list of eligible consumers shall be added when discovered and paid in conformity with the TN DCA Restitution Plan.

(h)  After issuing restitution checks to all eligible consumers in conformity with the TN DCA Restitution Program, if restitution monies still exist and if any payment to a consumer is returned as undeliverable and the Tennessee Division of Consumer Affairs is

Page 17 of 49

unable to locate the consumer or a consumer's check is not cashed within six (6) months, the funds due to such consumer will be delivered by the Tennessee Division of Consumer Affairs to the Treasurer of the State of Tennessee for treatment as unclaimed property as mandated by the Tennessee Uniform Disposition of Unclaimed Property Act, Tenn. Code Ann. § 66-29-101 *et seq.*

(i)     To provide restitution to the largest number of consumers, the Tennessee Division of Consumer Affairs shall not pay statutory interest to consumers.

(j)     All decisions or recommendations made by the Director of the Division of Consumer Affairs to complete the TN DCA Restitution Plan shall be final and non-appealable.

3.    Aside from acting as a set-off for actual monies received, participating in the TN DCA Restitution Program shall in no way limit or restrict a consumer's right to commence a private right of action should he or she so desire.

4.    This Court expressly retains jurisdiction to permit the Tennessee Division of Consumer Affairs, through the Tennessee Attorney General, to seek further approval or direction relating to payment of the TN DCA Restitution Program as it deems necessary until all payments have been made.

5.    Any reports or lists provided to the State of Tennessee or created by the Tennessee Division of Consumer or the Tennessee Attorney General's

Office to implement the TN DCA Restitution Program shall not be released to any person to protect the interest of consumer privacy, other than law enforcement authorities or pursuant to state or federal law, to prevent further marketing to these consumers and possible identity theft.

6.   Any funds received under the TN DCA Restitution Program by a consumer shall operate as a set off should additional restitution funds be available under this Order for restitution to consumers.

7.   In the event any funds remain in the account established for this TN DCA Restitution Program after all consumers have been paid, any remaining funds obtained by the State of Tennessee under this Order shall be divided by the percentage indicated and used as follows:

(a)   Fifty percent (50%) to the Tennessee Attorney General's Office for reasonable and appropriate attorneys' fees and costs of investigation, prosecution and monitoring of this matter, which may be used for consumer protection purposes or other lawful purpose at the sole discretion of the Tennessee Attorney General.

(b)   Twenty percent (20%) to the Tennessee Division of Consumer Affairs to be used to pay the costs associated with the restitution plan, to fund consumer education project(s), or for investigation and enforcement costs and expenses for investigations and cases under the Tennessee Consumer Protection Act of 1977 at the sole discretion of the Director of the Tennessee Division of Consumer Affairs.

(c)     Thirty percent (30%) to the General Fund of the State of
        Tennessee.

F.     Defendants agree that the facts as alleged in the Amended Complaint filed in this

       action shall be taken as true without further proof in any bankruptcy case or

       subsequent civil litigation pursued by Plaintiffs to enforce their rights to any

       payment or money judgment pursuant to this Order, including but not limited to a

       nondischargeability complaint in any bankruptcy case.  Defendants further

       stipulate and agree that the facts alleged in the Amended Complaint establish all

       elements necessary to sustain an action by Plaintiffs pursuant to Section

       523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this

       Order shall have collateral estoppel effect for such purposes.

## VII.

## Conditional Stay of Judgment Against Defendants

**IT IS FURTHER ORDERED** that:

A.     Plaintiffs' agreement to and the Court's approval of this Order are expressly

       premised upon the truthfulness, accuracy, and completeness of Defendants'

       Financial Statements, and Individual Defendants' sworn affidavits submitted to

       Plaintiffs (dated June 29, 2011), all of which Defendants assert are truthful,

       accurate, and complete.  Defendants and the Plaintiffs stipulate that Defendants'

       Financial Statements provide the bases for the monetary judgment in Section VI

       of this Order and that Plaintiffs have relied on the truthfulness, accuracy, and

       completeness of Defendants' Financial Statements;

B.     If, upon motion by Plaintiffs, this Court finds that any Defendant(s) has

(1) materially misstated in Defendants' Financial Statements, the value of any asset, (2) made any material misrepresentation or omitted material information concerning his or her financial condition by failing to disclose any asset that should have been disclosed in Defendants' Financial Statements, (3) made any other material misstatement or omission in Defendants' Financial Statements, (4) made any other material misstatement or omission in Individual Defendants' sworn affidavits, or (5) failed to fulfill its obligations under Section VI.C. of this Order, the Court shall terminate, as to the offending Defendant(s), the suspension of the monetary judgment entered in Section VI.A.  The Court, without further adjudication, shall enter a modified judgment holding the offending Defendant(s) liable to Plaintiffs in the amount of $15,738,941 less any amounts turned over to Plaintiffs pursuant to Section VI of this Order.  Upon such reinstatement of the monetary judgment, the Court shall make an express determination that the judgment shall become immediately due and payable by the offending Defendant(s), jointly and severally, and Plaintiffs shall be entitled to interest computed from the day of entry of this Order at the rate prescribed under 28 U.S.C. § 1961, as amended, on the unpaid balance.  Plaintiffs shall be permitted to execute on the judgment immediately after the suspension is lifted and engage in discovery in aid of execution;

C.      Defendants acknowledge and agree that (1) this monetary judgment is equitable monetary relief, solely remedial in nature, and not a fine, punitive penalty, punitive assessment, or forfeiture; (2) any proceedings instituted under this Section would be in addition to, and not in lieu of, any other civil or criminal

remedies as may be provided by law, including any other proceedings that Plaintiffs may initiate to enforce this Order; and (3) for purposes of any action brought pursuant to this Section of the Order, Defendants waive the right to contest any of the allegations in the Amended Complaint.

## VIII.

### Lifting of Asset Freeze

**IT IS FURTHER ORDERED** that the freeze of the assets of Defendants pursuant to the Temporary Restraining Order entered by this Court on August 5, 2010, and by the Stipulated Preliminary Injunction entered on August 20, 2010, shall be lifted for the sole purpose of transferring assets pursuant to Sections VI of this Order, and shall be dissolved upon the transfer of all such assets.

## IX.

### Appointment of Receiver to Wind Down Receivership Defendants and Liquidate Assets

**IT IS FURTHER ORDERED** that Robert H. Waldschmidt, the Receiver appointed by prior orders of this Court, is hereby appointed Receiver for the Receivership Defendants for the purpose of taking the necessary steps to wind down the business of the Corporate Defendant and liquidate Receivership assets. The Receiver is authorized and directed to:

A. Cease making any payments prescribed by Section III of the Stipulated Preliminary Injunction in this case to Defendants Timothy Thomas and Kennan Dozier, and shall only pay those secured debts that the Receiver deems necessary to preserve assets to be liquidated in accordance with subparagraphs B and C of this Section. The Receiver shall not make any payments to a creditor if the

creditors security interest is the same or exceeds the value of the assets;

B.     Liquidate all assets of Corporate Defendant;

C.     Take possession, custody, and control of the following assets of Individual
Defendants and liquidate them along with the assets of the Corporate Defendant:

1.     Lot 134 Brandon Park Downs in Franklin, Tennessee, titled to Kennan
Dozier;

2.     All bank accounts with the exception of $130,550.50.  The Receiver shall
distribute the $130,550.50 as follows:

(a)     Pay to the law firms Hollins, Raybin & Weissman, and Sherrard &
Roe their reasonable attorneys fees and expenses incurred in this
case in the amounts of $12,429.75 and $58,120.75, respectively;
and

(b)     Pay Defendant Kennan Dozier $60,000;

3.     The Permanent Seat Licenses for the Tennessee Titans season tickets titled
to Timothy Thomas;

4.     The 1997 Harley Davidson motorcycle titled to Timothy Thomas with
Vehicle Identification Number 1HD1BRL12VY048727 and Tennessee
title number 56944029;

5.     The stock in Reliant Bank held by Timothy Thomas;

6.     The stock in AFLAC held by Kennan Dozier; and

7.     The following items listed in the Receiver's inventory of the Individual
Defendants' home at 14 Tradition Lane, Brentwood, Tennessee:

(a)     50" Samsumg LCD TV;

(b)     Pegged Wood Harvest Table 6' W 6 Parsons Chairs;

(c)     Austin Sculpture Bronze Cigar Smoker;

(d)     Wine Collection;

(e)     Leather Theatre Seating;

(f)     Mitsubishi HC5000 Projector and 96" Screen;

(g)     Nathan EPTInG Oil On Board 342X77 54 Buick;

(h)     Olhausen Pool Table;

(i)     Hexagon Leather Top Gaming Table;

(j)     Landice L7 Treadmill;

(k)     Thomas Butterworth Oil Painting Framed, The Battle of the Texel 1673;

(l)     Harvest Table 72";

(m)     Corum Boutique Watch; and

(n)     Cast Aluminum Love Seat, Swivel Rocker, Hex Ottoman, Sectional.

D.     Take possession, custody, and control of the following assets of Individual Defendants, not before 10 days after entry of this Order, and surrender them to the lenders:

1.     The 2006 Hummer H2 vehicle titled to Timothy Thomas and Kennan Dozier with Vehicle Identification Number 5GRGN22UX6H100840 and Tennessee title number 85608775; and

2.     The 2008 Lexus L460 vehicle titled to Timothy Thomas and Kennan Dozier with Vehicle Identification Number JTHBL46FX85052431 and

Page 24 of 49

Tennessee title number 86979790.

Provided, however, that the Receiver is not required to liquidate any asset described in subparagraphs B and C of this Section that the Receiver determines, in his discretion, could not be sold for value. The Receiver shall promptly notify Plaintiffs of any such a determination. Plaintiffs must file any objection to the Receiver's determination within 30 days after receiving notice. If no objection is filed within that time, the Receiver may, in his discretion, abandon the asset.

The Receiver shall give notice of the method of sale of these assets by filing a notice of each sale with the Court, and serving counsel for the Plaintiffs and Defendants. Other than notice given to parties through the Court's CM/ECF system, the Receiver shall not be required to serve any other party with notice of each sale. The Receiver may pay (without further authorization) fees incurred by agents, auctioneers, realtors, closing agents, etc., at rates which are consistent with rates for liquidation of bankruptcy estates in the Middle District of Tennessee, pursuant to local rules of that court.

E.   Take any and all steps that the Receiver concludes are appropriate to wind down the Receivership;

F.   Continue to exercise full control over the Receivership Defendants and continue to collect, marshal, and take custody, control, and possession of all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of, the Receivership Defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Receivership Defendants on account of their activities prior to the date of the entry of this Order, with full power to collect,

Page 25 of 49

receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants ("Receivership Estate"). The Receiver shall promptly initiate and prosecute all legal proceedings to fulfill the obligations set forth in this subparagraph of the Order, and provide monthly updates to the Court and Plaintiffs on the status of any such proceedings.

G. Continue to have full control over the management and personnel of the Receivership Defendants, including the authority to remove, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of these Defendants from control of, management of, or participation in, the affairs of these Defendants;

H. Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the Receivership Defendants, cancel the Receivership Defendants' contracts, collect on amounts owed to the Receivership Defendants, and take such other steps as may be necessary to wind-down, terminate and dissolve the Receivership Defendants efficiently;

I. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior

Case 3:10-cv-00733    Document 157    Filed 09/26/11    Page 26 of 52 PageID #: 2530

approval of any payment of any debt or obligation incurred by the Receivership

Defendants prior to the date of entry of the temporary restraining order in this

action, except payments that the Receiver deems necessary or advisable to secure

and liquidate assets of the Receivership Defendants, such as rental payments or

payment of liens;

J.     Continue to perform all acts necessary or advisable to complete an accounting of

the Receivership assets, and prevent unauthorized transfer, withdrawal, or

misapplication of assets;

K.     Continue to maintain accurate records of all receipts and expenditures that he

makes as Receiver;

L.     Continue to enter into contracts and purchase insurance as advisable or necessary;

M.     Continue to defend, compromise, adjust, or otherwise dispose of any or all actions

or proceedings instituted in the past or in the future against the Receiver in his

role as Receiver, or against the Receivership Defendants, as the Receiver deems

necessary and advisable to carry out the Receiver's mandate under this Order;

N.     Continue to maintain bank accounts created as designated depositories for funds

of the Receivership Defendants, and make all payments and disbursements from

the Receivership Estate from such an account;

O.     Continue to perform all incidental acts that the Receiver deems to be advisable or

necessary, which includes retaining, hiring, or dismissing any employees,

independent contractors, or agents;

P.     Continue to cooperate with reasonable requests for information or assistance from

any state or federal law enforcement agency;

Q.     Dispose of, or arrange for the disposal of, the records of the Receivership

Defendants no later than two (2) years after the Court's approval of the

Receiver's final report.  Prior to disposing of the records, the Receiver shall notify

Plaintiffs' counsel and the Individual Defendants.  The Receiver shall provide

reasonable access to the records to the Individual Defendants, at their expense.

So that the privacy of consumers is safeguarded, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner.  For records that must be retained, the Receiver may elect to retain records in their original form or to retain photographic or electronic copies so long as said records are:  (1) kept in a secure, locked area; (2) stored electronically on a computer network or drive with restricted access or an encrypted electronic storage device; or (3) redacted of all personally identifiable information including dates of birth, Social Security numbers, driver's license numbers or other state identification numbers, passport numbers, financial account numbers, or credit or debit card numbers.  Provided, however, that the Receiver may not sell, rent, lease, transfer, disclose, use, or otherwise benefit from the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who paid any money to Defendants in connection with the advertising, promotion, marketing, offering for sale, or sale of any product or service, except that the Receiver may disclose such identifying information and any records to a law enforcement agency, or as required by any law, regulation, or court order.

R.     Notify all purchasers of healthcare-related benefits or discount programs

marketed or sold by Defendants of Plaintiffs' lawsuit and the terms of this Order.

To fulfill this obligation, the Receiver shall:

1.      Using records of the Receivership Defendants, within 90 days of entry of
        this Order, deliver a notice in the form of Attachment A to this Order to all
        purchasers of healthcare-related benefits or discount programs sold by
        Defendants who may be currently enrolled in such programs informing the
        purchaser of the existence and allegations of Plaintiffs' lawsuit and the
        requirements of this Order, as well as explaining to the purchaser that
        Defendants made false statements about the healthcare-related benefits or
        programs they marketed or sold.  To accomplish this, the Receiver may
        employ assistants and contract with a class action settlement administrator
        to update contact information of purchasers and deliver the notice.  Such
        notice shall be sent in a manner which is reasonably calculated to be
        received by the purchasers;

2.      Within 60 days of entry of this Order, the Receiver shall determine, in
        consultation with and to the satisfaction of Plaintiffs, whether records of
        the Receivership Defendants are sufficient to identify all purchasers
        currently enrolled in healthcare-related benefits or discount programs sold
        by Defendants.  If the records are not sufficient, within 75 days of entry of
        this Order, the Receiver shall:

        (a)     Subpoena from all persons or entities whose healthcare-related
                benefits or discount programs were marketed or sold by
                Defendants or who otherwise maintain information concerning the
                identity of the purchasers of such healthcare-related benefits or
                discount programs, documents containing all contact information

Page 29 of  49

(including, but not limited to, names, addresses, telephone numbers, and e-mail addresses), dates of purchase, programs or products purchased, total amounts paid, amounts of any full or partial refund or chargeback, and payment information for all such purchasers, and notice depositions of such persons or entities if the Receiver deems such depositions necessary. Such persons or entities include, but are not limited to, the following: (1) International Association of Benefits ("IAB"); (2) Aegis; (3) Homeland Healthcare; (4) Visionary Healthcare Solutions; (4) RX Access; (5) Security Information Systems ("SIS"); (6) Benefits USA; and (7) EMC National Life.

(b)    Within 60 days of receiving the information described in Section IX.R.2.a., send a notice to each purchaser in the form of Attachment A to this Order informing the purchaser of the existence and allegations of Plaintiffs' lawsuit and the requirements of this Order, as well as explaining to the consumer that Defendants made false statements about the healthcare-related benefits or programs they marketed or sold. Such notice shall be sent in a manner which is reasonably calculated to be received by the purchasers.

The Receiver shall promptly initiate and prosecute all legal proceedings to enforce any subpoena issued under Section IX.R.2.a, and provide monthly updates to the Court and Plaintiffs on the status of any such proceedings.

Unless otherwise ordered by this Court, the Receiver shall not be required to file tax returns for any of the Defendants in this proceeding, but shall provide reasonable cooperation with any accountant or professional who needs access to records to prepare said returns.

## X.

### Compensation of Receiver

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall apply to the Court for approval of specific amounts of compensation and expenses and must not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XI.

### Receiver's Dissolution and Disbursement Report

**IT IS FURTHER ORDERED** that:

A.       No later than sixty (60) days from the time the Receiver has finished sending notice to all purchasers of healthcare-related benefits or discount programs sold by Defendants in accordance with Section IX.R. of this Order, the Receiver shall file and serve on the parties a report (the "Receiver's Dissolution and Disbursement Report") to the Court that details the steps taken to dissolve the Receivership Estate. The Receiver's Dissolution and Disbursement Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the

Receivership.

B.  The Receiver shall mail copies of the Receiver's Dissolution and Disbursement Report to the creditors listed in the Receiver's monthly reports, along with a notice stating that any objections to paying any assets of the Receivership Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Receiver's Dissolution and Disbursement Report. The Receiver is not required to mail copies of the Receiver's Dissolution and Disbursement Report to any holders of consumer claims.

C.  No later than fifteen (15) days after submission of the Receiver's Dissolution and Disbursement Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.  The Court will review the Receiver's Dissolution and Disbursement Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

1.  Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section X of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

2.  Transfer the gross amount of commission payments to Defendants

Page 32 of 49

received after the date of this Order for Defendants' sale of healthcare-related benefits or discount programs or insurance to the State of Tennessee.

3. Assign all of Defendants' right, title, and interest in and to future commission payments from Defendants' sale of healthcare-related benefits or discount programs or insurance to the State of Tennessee. Such future commission payments include, but are not limited to, payments from the following entities: (1) International Association of Benefits ("IAB"); (2) Aegis; (3) Homeland Healthcare; (4) Visionary Healthcare Solutions; (4) RX Access; (5) Security Information Systems ("SIS"); (6) Benefits USA; and (7) EMC National Life.

4. With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report. The Receiver shall notify Plaintiffs of any such decision to withhold funds. Plaintiffs must file any objection to any such decision by the Receiver within 30 days after receiving notice. If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Commission or its designated agent.

5. Pay all remaining funds to the Commission or its designated agent to

reduce the monetary judgment in Section VI.

6.    Any party asserting a claim against the Receivership Estate who asserts that the claim should be paid before the payment described in Section XI.D.5 of this Order is made, shall file a motion with the Court to establish the claim's priority, along with any objections to the Receiver's Dissolution Report and Disbursement, within 30 days after submission of the Report to the Court. Such party shall serve copies of any motions and objections on the Receiver and Plaintiffs. Plaintiffs and the Receiver must file any response to the motions and objections within 30 days after receiving them.

E.    If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Receivership Estate) are appropriate, the Receiver shall file an additional report or reports (the "Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

F.    Upon the completion of the disposition of all assets and money, and after all records have been destroyed, or turned over to other governmental authorities in accordance with this Order, the Receiver shall file with the Court a Final Report, stating that the administration of the Receivership Estate is completed. The Receiver shall serve the Final Report on all the parties to this action. Any objection to the Final Report by the parties must be filed within fifteen (15) days after the Receiver filed the Report with the Court. If no objections are filed within that time, the Receiver shall submit a proposed order to the Court which

discharges the Receiver from his obligations in this matter.

Any payments arising under Section XI.D.2 and 3 shall be made by certified check payable to "Treasurer, State of Tennessee - Cover Tennessee" would be delivered monthly to the Tennessee Attorney General for use by the Cover Tennessee program to provide Cover Tennessee insurance to additional consumers and/or to provide medical benefits to existing Cover Tennessee members not otherwise available within Cover Tennessee's current budget. These funds will not be used for personnel or to cover expenses already funded by Cover Tennessee's budget rather they shall be used to supplement existing benefits. The determination of the appropriate use by Cover Tennessee of these funds in conformity with this Judgment shall be at the sole discretion of the Deputy Commissioner for the Division of Health Care Finance and Administration, Tennessee Department of Finance & Administration, who, upon request will provide information to the Tennessee Attorney General of their use(s) so long as funds remain. In the event the existing Tennessee health coverage changes so that new uses would need to be identified and funds are continuing to be received, the State of Tennessee may apply to the Court by motion and propose a new use of the ongoing funds that would benefit Tennessee consumers who have difficulty obtaining healthcare benefits or who are otherwise medically needy and not covered by another government program for the medical care they need. The Defendants waive and relinquish any objections or issues they might raise regarding such a motion.

## XII.

## Cooperation with Receiver

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the assets of the

Receivership Defendants. This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## XIII.

### Cooperation with Plaintiffs' Counsel

**IT IS FURTHER ORDERED** that Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of Plaintiffs' Amended Complaint, cooperate in good faith with Plaintiffs and appear at such places and times as Plaintiffs shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by Plaintiffs. If requested in writing by Plaintiffs, Defendants shall appear and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint, without the service of a subpoena.

The Defendants shall also cooperate fully to assist Plaintiffs in identifying the name, address, telephone number, date of purchase, program or product purchased, total amount paid, amount of any full or partial refund or chargeback, and payment information for consumers who were charged by Defendants, and any further information Plaintiffs deems necessary to effectuate any redress program for consumers.

## XIV.

### Compliance Monitoring

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating Defendants' compliance with this Order, including the financial representations upon which the judgment was suspended and any failure to transfer any assets as required by this Order:

A. Within ten (10) days of receipt of written notice from a representative of the Plaintiffs, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B. In addition, Plaintiffs are authorized to use all other lawful means, including but not limited to:

1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

2. having its representatives pose as consumers and suppliers to Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

C. Defendants each shall permit representatives of Plaintiffs to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

Page 37 of 49

Provided, however, that nothing in this Order shall limit Plaintiffs' lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1 and and Tenn. Code Ann. § 47-18-106, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XV.

### Compliance Reporting

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order,

1.    Each Individual Defendant shall notify Plaintiffs of the following:

(a)    Any changes in such Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

(b)    Any changes in such Defendant's employment status (including self-employment), and any change in such Defendant's ownership in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that such Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

Page 38 of 49

(c)    Any changes in such Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

2.    Defendants shall notify Plaintiffs of any changes in structure of any Corporate Defendant or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to:  incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any such change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify Plaintiffs as soon as is practicable after obtaining such knowledge.

B.    One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to Plaintiffs, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.    For each Individual Defendant:

(a)    such Defendant's then-current residence address, mailing addresses, and telephone numbers;

       (b)    such Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that such Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

       (c)    Any other changes required to be reported under subparagraph A of this Section.

2.    For all Defendants:

       (a)    A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;"

       (b)    Any other changes required to be reported under subparagraph A of this Section.

C.    Each Defendant shall notify Plaintiffs of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

D.    For the purposes of this Order, Defendants shall, unless otherwise directed by Plaintiffs' authorized representatives, send by overnight courier (not the U.S. Postal Service) all reports and notifications to the Commission and the State of Tennessee that are required by this Order to:

Associate Director for Enforcement
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Re: *FTC and State of Tennessee v. U.S. Benefits, LLC, Timothy Thomas, and Kennan Dozier* (X100046)

and

Office of the Attorney General of Tennessee
c/o Deputy Attorney General
Consumer Advocate and Protection Division
P.O. Box 20207
Nashville, TN 37202-0207

Provided that, in lieu of overnight courier, Defendants may send the Commission's copy of such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at DEbrief@ftc.gov.

E.  For purposes of the compliance reporting and monitoring required by this Order, Plaintiffs are authorized to communicate directly with each Defendant.

## XVI.

### Recordkeeping

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Corporate Defendant, and Individual Defendants for any business for which they, individually or collectively, are the majority owner or directly or indirectly control, are hereby restrained and enjoined from failing to create and retain the following records:

A.  Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.  Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an

Page 41 of 49

independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.      Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.      Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

E.      Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.      All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to Plaintiffs pursuant to the Section titled "Compliance Reporting."

## XVII.

## Distribution of Order

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.      Corporate Defendant:  Each Corporate Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the

Page 42 of 49

subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in subparagraph A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in subparagraph A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.     Individual Defendant as control person: For any business that an Individual Defendant controls, directly or indirectly, or in which such Defendant has a majority ownership interest, such Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in subparagraph A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in subparagraph A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

C.     Individual Defendant as employee or non-control person: For any business where an Individual Defendant is not a controlling person of a business but otherwise

engages in conduct related to the subject matter of this Order, such Defendant

must deliver a copy of this Order to all principals and managers of such business

before engaging in such conduct.

D.    Defendants must secure a signed and dated statement acknowledging receipt of

the Order, within thirty (30) days of delivery, from all persons receiving a copy of

the Order pursuant to this Section.

## XVIII.

## Penalties for Failure to Comply Under Tennessee Consumer Protection Act

In accordance with Tenn. Code Ann. § 47-18-108(c), any knowing violation of the terms

of this Order shall be punishable by a civil penalty of not more than two thousand dollars

($2,000), recoverable by the state for each violation, in addition to any other appropriate relief.

## XIX.

## Payment of Court Costs

All court costs associated with this action and any other incidental costs or expense

incurred in this action thereby shall by borne by Defendants.  No costs shall be taxed to

Plaintiffs.  Further, no discretionary costs shall be taxed to Plaintiffs.  Each party shall bear its

own attorneys fees and expenses (*e.g.*, costs of deposition transcripts).

## XX.

## Resolution of Tennessee Cause of Action

As to the civil cause of action asserted by the State of Tennessee Attorney General

through the Division of Consumer Affairs, this Order only resolves the civil Tennessee

Consumer Protection Act cause of action raised in the Complaint and Amended Complaint by

the State of Tennessee Attorney General  through the Division of Consumer Affairs based on the

factual allegations contained in the Complaint and Amended Complaint.

## XXI.

### Acknowledgment of Receipt of Order

**IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to Plaintiffs a truthful sworn statement acknowledging receipt of this Order.

## XXII.

### Vacating of Stipulated Preliminary Injunction

Effective upon entry of this Order, the Stipulated Preliminary Injunction in this case is vacated.

## XXIII.

### Retention of Jurisdiction

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

So ordered this _____ day of _____, 2011.


_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

So stipulated and respectfully submitted,

Dated: _____ 7 22.11 _____

_signature_

Arturo A. DeCastro, DC Bar No. 992023
Kelly A. Horne, CA Bar No. 242675
Federal Trade Commission
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
Phone: (202) 326-2747
Fax: (202) 326-3395
Email: adecastro@ftc.gov
       khorne@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

_signature_

Robert E. Cooper, Jr., TN Bar No. 10934
Attorney General and Reporter

_signature_

Olha N. M. Rybakoff, TN Bar No. 24254
Robert B. Harrell, Sr., TN Bar No. 24470
Assistant Attorneys General
Office of the Attorney General
Consumer Advocate and Protection Division
425 5th Avenue North, 3rd Floor
Nashville, TN 37243
Phone: (615) 532-2590 (Rybakoff)
(615) 741-3549 (Harrell)
Fax: (615) 532-2910
Email: olha.rybakoff@ag.tn.gov
       brant.harrell@ag.tn.gov

Attorneys for Plaintiff
State of Tennessee

_signature_

Michael G. Abelow (No. 26710)
Sherrard & Roe, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Phone: (615) 742-4532
Fax: (615) 742-4539
Email: mabelow@sherrardroe.com

Attorney for Defendants
Timothy Thomas, Kennan Dozier,
and United States Benefits, LLC

_signature_

Timothy Thomas
Individually and on behalf of Defendant
United States Benefits, LLC

_signature_

Kennan Dozier
Individually and on behalf of Defendant
United States Benefits, LLC

Case 3:10-cv-00733   Document 157   Filed 09/26/11   Page 46 of 52 PageID #: 2550

## Certificate of Service

I hereby certify that on *September 1, 2011*, I electronically filed (Proposed)

Stipulated Final Order for Permanent Injunction and Monetary Judgment Against United States

Benefits, LLC, Timothy Thomas, and Kennan Dozier with the Clerk of the Court using

CM/ECF. I also certify that the document was served that day, *September 1, 2011*, on all

counsel of record identified below via transmission of Notices of Electronic Filing generated by

CM/ECF.

## Service List

Arturo A. DeCastro
Federal Trade Commission
600 Pennsylvania Avenue, NW
Drop-H-286
Washington, DC 20580
(202) 326-2747
Fax: (202) 326-3395
Email: adecastro@ftc.gov

Kelly A. Horne
Federal Trade Commission
600 Pennsylvania Avenue, NW
Drop-H-286
Washington, DC 20580
(202) 326-3031
Fax: (202) 326-3395
Email: khorne@ftc.gov

Michael G. Abelow
Sherrard & Roe, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
(615) 742-4532
Fax: (615) 742-4539
Email: mabelow@sherrardroe.com

Christopher R. Richie
Sessions, Fishman, Nathan & Israel, LLC
Founders Square
900 Jackson Street
Suite 440
Dallas, TX 75202-4473
(214) 741-3009
Fax: (214) 741-3055
Email: crichie@sessions-law.biz

Page 47 of 49

Olha N.M. Rybakoff
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
(615) 741-2935
Fax: (615) 532-2910
Email: olha.rybakoff@ag.tn.gov

Robert E. Cooper , Jr.
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
Email: bob.cooper@ag.tn.gov

Robert B. Harrell, Sr.
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
(615) 741-3549
Fax: (615) 532-2910
Email: brant.harrell@ag.tn.gov

Robert Howard Waldschmidt
Howell & Fisher
Court Square Building
300 James Robertson Parkway
Nashville, TN 37201-1107
(615) 244-3370
Email: rhwaldschmidt@aol.com

David R. Clouston
Sessions, Fishman, Nathan & Israel, LLC
Founders Square
900 Jackson Street
Suite 440
Dallas, TX 75202-4473
(214) 741-3005
Fax: (214) 741-3055
Email: dclouston@sessions-law.biz

Philip L. Robertson
Smythe, Puryear & Robertson
144 Second Avenue, N
Suite 300
Nashville, TN 37201
(615) 255-4859
Fax: (615) 255-4855
Email: probertson@smythepuryear.com

Gordon D. Foster
Winchester, Sellers, Foster & Steele, P.C.
First Tennessee Plaza
800 S. Gay Street
Suite 1000
Knoxville, TN 37929
(423) 637-1980
Email: gfoster@wsfs-law.com

Donna E. Sonner
U.S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219
(615) 781-5330
Fax: (615) 781-5321
Email: sonner.donna@dol.gov

Joel D. Eckert
Bradley Arant Boult Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN 37203-0025
(615) 252-2360
Fax: (615) 252-4710
Email: jeckert@babc.com

Charles P. Yezbak , III
Yezbak Law Offices
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
(615) 250-2000
Fax: (615) 250-2020

S. Ralph Gordon
S. Ralph Gordon, P.C.
1407 Tyne Boulevard
Nashville, TN 37215
(615) 371-0712
Fax: (615) 371-9618
Email: srg1@att.net

David W. Garrison
Barrett Johnston, LLC
217 Second Avenue, N
Nashville, TN 37201
(615) 244-2202
Fax: (615) 252-3798
Email: dgarrison@barrettjohnston.com

_____
Attorney for Plaintiff
Federal Trade Commission

# Attachment A

Date

RE:  Consumer lawsuit against bogus health insurance company

Dear _____:

We're writing because a company sold you a product it falsely claimed was health insurance.  The company used many different names, but you may have done business with people who called themselves:

- U.S. Benefits, LLC;
- United States Health;
- United Benefits of America;
- United Benefits;
- United Health Benefits;
- Health Care America;
- HCA;
- National Benefits of America;
- Insurance Specialty Group; or
- Adova Health

The Federal Trade Commission (FTC), the nation's consumer protection agency, and the State of Tennessee have sued this company for deceptive practices. According to the lawsuit, U.S. Benefits falsely claimed what it was selling was health insurance.  But what people really got were small discounts with a limited number of healthcare providers – not insurance.

As part of the settlement of this case, the Court banned the company and its operators from selling any healthcare-related benefits or discount programs nationwide and from selling health insurance in Tennessee or to people who live there.

We're contacting you because U.S. Benefits made false statements about what it sold you.  Please review the paperwork you received as a result of your purchase or any other information regarding your purchase.  If the terms don't correspond with what the salesperson told you – or if you aren't satisfied with the service – you can cancel immediately by contacting the providers of the healthcare-related benefits or discount programs you purchased.  Please note that the company that sold you the benefits or programs, i.e., U.S. Benefits, is now out of business.

To find out more about fraudulent medical discount plans, visit www.ftc.gov/medicaldiscountscams. We've also enclosed a brochure from the FTC, *Is It Really Health Insurance? Making Sure You Get What You Pay For*.

Sincerely,

_____

Federal Trade Commission
State of Tennessee